UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORETHA TAPLIN,

    Plaintiff,                                           Hon. Paul L. Maloney

v.                                                     Case No. 1:19-cv-172

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Secretary of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence

supporting that decision. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Secretary of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## BACKGROUND

Plaintiff was 37 years of age on her alleged disability onset date. (PageID.251). She possesses a sixth grade education and worked previously as a hospital food service worker.

(PageID.40, 112). Plaintiff applied for benefits on November 12, 2015, alleging that she had been disabled since May 31, 2009, due to: (1) post-traumatic stress disorder (PTSD); (2) chronic pain in her neck, back, and feet; (3) asthma; and (4) depression. (PageID.251-56, 310).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.190-249). Following an administrative hearing, ALJ Timothy Scallen, in an opinion dated June 12, 2018, determined that Plaintiff was not disabled. (PageID.30-42, 108-42). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.20-25). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

§§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ determined that Plaintiff suffers from: (1) history of treatment for bunions; (2) mild dextroconvex cervical-thoracic curvature; (3) dextroconvex curvature with mild degenerative changes of the lumbar spine; (4) cognitive disorder; (5) major depressive disorder; (6) post-traumatic stress disorder; and (7) personality disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.32-34).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she cannot climb ropes, ladders, or scaffolds, but can occasionally climb stairs and ramps; (2) she can

occasionally perform overhead reaching and pushing/pulling with her upper extremities; (3) she can occasionally operate foot controls bilaterally; (4) she must avoid unprotected heights and concentrated exposure to moving machinery, uneven or rough surfaces, and fumes, dusts, gases, and poor ventilation; (5) she must occasionally use a cane for ambulation; (6) she is limited to simple, routine, repetitive tasks with minimal changes regarding work procedures and responsibilities; and (7) she can have occasional interaction with supervisors and co-workers, but no interaction with the general public.   (PageID.34-35).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.   While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).

This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding.   Such was the case here, as the ALJ questioned a vocational expert.   The vocational expert testified that there existed 15,500 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (PageID.140-

42, 348-51).  This represents a significant number of jobs.  *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").  Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

### I.     Medical Evidence

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contains copies of medical treatment records and statements by Plaintiff.  The ALJ described this evidence as follows:

> Throughout 2015, the claimant treated with Cheryl Burley, a nurse practitioner, for neck pain and back pain. The claimant consistently exhibited normal musculoskeletal evaluations, normal neurological evaluations, and a normal gait. The claimant was consistently treated with pain medication (Exhibit 6F/1, 2, 3, 5, 11, 15, 19, 26).
>
> On December 19, 2015, the claimant was evaluated by Dr. Williams for complaints of pain in her neck and back. The claimant exhibited a normal gait and was able to ambulate without the use of an assistive device. The claimant also exhibited 5/5 strength in all the extremities, intact reflexes, no muscle atrophy, negative straight leg raising bilaterally, negative anterior/posterior drawer test, negative Patrick's test, and negative FABER's test. Dr. Williams noted that the claimant was able to bend forward, squat, and heel/toe walk without difficulty. The claimant also exhibited normal range of motion of the cervical spine, lumbar spine, shoulders, elbows, hips, knees, ankles, and wrists. The claimant exhibited two positive tender points in the occiput and low cervical spine. Dr. Williams noted that the claimant exhibited no muscle spasms on the examination and that the claimant denied difficulty with opening jars, buttoning, writing, picking up a coin, or tying her shoes (Exhibit B7F).
>
> Therefore, through 2015, the claimant's physical evaluations were relatively unremarkable except for complaints of neck and back pain. The claimant was treated with pain medication.

However, the claimant consistently exhibited good strength in all the extremities, no neurological deficits, and a normal gait.

On February 25, 2016, the x-rays of the claimant's lumbar spine indicated only mild degenerative changes (Exhibit B10F/1).

On March 8, 2016, the MRI of the claimant's cervical spine indicated positional variations, but no disc herniation or spinal stenosis (Exhibits B10F/2; and Bl 1F/1).

Throughout 2016, the claimant treated with Dr. Houghn and Melissa Joseph, a physician assistant, for complaints of neck and back pain. The claimant consistently exhibited good strength in all the extremities, no neurological deficits, only mild limitation of motion of the cervical spine, normal range of motion of the lumbar spine, normal range of motion of both knees, intact reflexes, and a normal gait (Exhibits B12F/26, 28, 29, 30; B21F/11; and B23F/12, 22, 27).

On October 27, 2016, Melissa Joseph noted that the claimant was doing well on her medications and had no concerns. She also indicated that the claimant's pain medication was controlling her neck pain (Exhibit B23F/12).

Therefore, throughout 2016, the claimant's physical evaluations were relatively unremarkable. The claimant consistently exhibited good functional range of motion of the cervical and lumbar spine, good strength in all the extremities, no neurological deficits, and a normal gait.

Throughout 2017, the claimant treated with Jennifer Dykstra, a nurse practitioner, Melissa Joseph, a physician assistant, David Beard, a nurse practitioner, and Kimberly Thayer, a nurse practitioner. Throughout 2017, the claimant consistently exhibited normal range of motion of the neck, normal range of motion of the lumbar spine, good strength in all the extremities, intact reflexes, no neurological deficits, and a normal gait (Exhibits B22F/9; B24F/19, 20, 43, 45; B25F/2, 4, 15, 18, 37; and B26F/8, 24, 38).

On April 4, 2017, Jennifer Dykstra, a nurse practitioner, noted that the claimant was doing well with her pain medications and took Imitrex only 1-3 times a month for her migraines. Additionally, Ms. Dykstra noted that the claimant denied any side effects to medications. The claimant exhibited normal range

of motion of the cervical spine, normal respiration, and no neurological deficits (Exhibit B25F/14, 15, 18).

On June 30, 2017, the claimant had a physical examination conducted by David Beard, a nurse practitioner. The claimant complained of primarily lower neck pain that radiated to her right shoulder. She indicated that she got better throughout the day after taking her medications and walking around. The claimant exhibited normal range of motion of the neck and no neurological deficits (Exhibit B26F/22, 24).

Therefore, throughout 2017, the claimant consistently exhibited normal range of motion of the cervical spine, normal range of motion of the lumbar spine, good strength in all the extremities, no neurological deficits, and a normal gait. Additionally, the claimant consistently denied any side effects to her medications and indicated that she got better throughout the day after taking her medications and walking around. These objective clinical findings are consistent with the imaging studies of the cervical and lumbar spine, which indicate only mild degenerative changes.

In terms of the claimant's depression and anxiety, the claimant's functioning is inconsistent with the assessments of the treating therapists.

On April 19, 2015, the claimant was evaluated by Dr. Naugle, a psychologist, at the request of her representative. The claimant was diagnosed with major depressive disorder, posttraumatic stress disorder, avoidant personality disorder, paranoid personality disorder, and borderline personality disorder (Exhibit B4F).

On December 28, 2015, the claimant attended a psychological evaluation conducted by Laura Kracker, a limited licensed psychologist. The claimant complained of depression and anxiety. The claimant exhibited appropriate hygiene, somewhat logical thought process, cooperative behavior, difficulty understanding some questions, poor calculations, and decreased memory (Exhibit B18F).

On February 2, 2016, the claimant attended a psychological evaluation conducted by Dr. Griffith. The claimant's testing indicated a full scale IQ of 59, which places the claimant in the extremely low range of intellectual functioning. The claimant

>was diagnosed with intellectual disability, mild (Exhibit B9F). However, this assessment is given little weight because it is inconsistent with the record as a whole. The claimant was able to take the bus to the meeting with Dr. Griffith without difficulty. Additionally, the claimant has been noted to care for personal needs, follow simple instructions, and was able to perform substantial gainful activity, which are inconsistent with extremely low intellectual functioning.
>
>Throughout 2016 and 2017, the treating physicians consistently noted that the claimant exhibited normal mood and affect, normal behavior, and intact judgment, which indicates an ability to interact appropriately with others and does not corroborate allegations of significant mood swings (Exhibits B201F/11; B22F/9; B23F/12, 22; B24F/4, 20, 45; B25F/2, 18, 37; and B26F/8, 24, 38).

(PageID.36-38).

## II.     Plaintiff is not Entitled to a Sentence Six Remand

While Plaintiff was represented by counsel before the Commissioner, she is representing herself in this Court. In her brief, Plaintiff argues that new medical evidence "may help [her] case." Plaintiff has not presented this Court with any new evidence, but the Court notes that the administrative record contains information which was not presented to the ALJ. (PageID.68-107). The Court, therefore, interprets Plaintiff's statement as a request that this Court consider such evidence and vacate the Commissioner's decision.

As is well understood, however, this Court cannot consider evidence which was not presented to the ALJ. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. Plaintiff bears the burden of making

this showing.  *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

The evidence in question reveals the following.  On September 18, 2018, Plaintiff reported experiencing neck and shoulder pain.  (PageID.84-87).  Plaintiff was provided a trigger point injection and encouraged to quit smoking and lose weight.  (PageID.84-87).  Plaintiff received another such injection on October 16, 2018.  (PageID.82-83).  Treatment notes dated February 20, 2019, indicate that Plaintiff's elbow pain was well-controlled with a cortisone injection.  (PageID.72).  Plaintiff cannot establish that this evidence is material, because it is not reasonable to conclude that the Commissioner would have reached a different result if presented with such.  *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

The Court recognizes that this evidence contains treatment notes dated January 16, 2019, indicating that Plaintiff's toe pain/impairment had increased to the point where surgical intervention was presented as a possible method of treatment.  (PageID.74-75).  This evidence does not advance Plaintiff's cause, however, because there is nothing in the record or Plaintiff's submissions supporting the argument that this deterioration in Plaintiff's condition occurred prior to the date of the ALJ's decision.  While this evidence may support a more limited RFC in the context of a new application for disability benefits, it is not reasonable to conclude that consideration of this evidence would lead to a different result vis-à-vis Plaintiff's current application for benefits.  Accordingly, this argument is rejected.

Finally, in light of Plaintiff's pro se status, the Court has thoroughly reviewed the record to determine whether the ALJ's decision in this matter is in any way defective or deficient.  This review has revealed nothing which calls into question the ALJ's decision making process, the

legal standards he applied, or the substantiality of the evidence in support of his decision. Accordingly, the Court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: October 4, 2019              /s/ Ellen S. Carmody
                                  ELLEN S. CARMODY
                                  United States Magistrate Judge